[Cite as *State v. Thacker*, 2021-Ohio-2726.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 19CA18 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| FRANK J. THACKER, | : | |
| Defendant-Appellant. | : | **RELEASED 8/05/2021** |

<u>APPEARANCES</u>:

Jeremy Masters, Assistant State Public Defender, Columbus, Ohio, for appellant.

Brigham Anderson, Lawrence County Prosecuting Attorney, Ironton, Ohio, for appellee.

Hess, J.

**{¶1}** Frank J. Thacker appeals his conviction for rape, kidnapping, and abduction. Thacker raises five assignments of error for our review. He contends that his conviction was against the manifest weight of the evidence because the victim initially failed to testify as to penetration and there were numerous inconsistencies between the victim's testimony and the testimony of a key witness. However, not only did the victim testify about penetration, but the treating physician also testified that the sexual assault included penetration. Moreover, both the victim and her friend testified consistently about the events that occurred that evening, the type and color of vehicle, and the general appearance of the assailant. Additionally, the state presented the testimony of two DNA experts who testified that the DNA specimen collected from the victim was an exact match to Thacker. Reviewing the record, we cannot say that this is an exceptional case where the evidence weighs heavily against the convictions, that the trier of fact lost its way, or

that a manifest miscarriage of justice has occurred. Accordingly, the verdict was not against the manifest weight of the evidence.

{¶2}    Thacker argues that the trial court abused its discretion when it denied his motion to dismiss the indictment because the 19-year preindictment delay was the result of inactions or omissions of the state. However, Thacker failed to prove actual prejudice by the preindictment delay. Thus, the trial court did not abuse its discretion in denying his motion to dismiss.

{¶3}    Next, Thacker contends that the trial court should have declared a mistrial due to misconduct of a juror because the juror failed to disclose her relationship to the victim. But the trial court removed that juror, replaced her with an alternate, and conducted a voir dire of the remaining jurors to determine whether they were able to be fair and impartial. Each juror testified that they would be fair and impartial. Thus, the trial court did not abuse its discretion when it denied Thacker's motion for a mistrial.

{¶4}    Thacker argues that his trial counsel was ineffective for: (1) failing to bring the trial court's attention to three separate felony arrests from which the state should have obtained his DNA sample, which he argues bolsters his claimed violation of his speedy trial rights  and (2) failing to object to the prosecution's leading questions of the victim that rehabilitated the state's case pertaining to the ultimate issue of penetration. However, we find that trial counsel was not deficient for failing to raise his three prior felony arrests because the state was under no obligation to obtain Thacker's DNA specimen at the time he was arrested for those offenses. And, because he failed to show actual prejudice from the preindictment delay, the state's reasons for the delay were irrelevant to the speedy trial analysis. Additionally, trial counsel's decision not to object to leading questions is a

matter of trial strategy we do not second guess.  Therefore, Thacker has failed to show that his trial counsel was deficient or that he was prejudiced.

{¶5}    Last, Thacker contends that these cumulative errors warrant a reversal. However, because we find no merit to any of his assignments of error, the cumulative error doctrine is not applicable.

{¶6}    We reject his arguments, overrule his assignments of error, and affirm his convictions.

## I. FACTS

{¶7}    In May 2018, the Lawrence County Grand Jury indicted Thacker on three counts of rape in violation of R.C. 2907.02(A)(2), all first-degree felonies; one count of kidnapping in violation of R.C. 2905.01(A)(4)(1), a first-degree felony; and one count of abduction in violation of R.C. 2905.02(A)(1)(b), a third-degree felony, all which allegedly occurred more than 18 years earlier, in December 1999. Thacker pleaded not guilty and moved to have the indictment dismissed, arguing that his rights to a speedy trial and due process had been violated. The state opposed the motion, arguing that the state did not know that Thacker was the perpetrator until the Combined DNA Index System (CODIS) match of his DNA occurred in April 2018. Thacker's DNA was procured after he was arrested in February 2018 for separate kidnapping and rape offenses involving a different victim. The trial court denied Thacker's motion to dismiss. Prior to the start of the trial, the state moved to dismiss count three of the indictment, which the trial court granted. The case proceeded to trial, which produced the following evidence.

{¶8}    Jennifer Cornette was the childhood friend of the victim, A.S., and was with her the night A.S. was kidnapped and raped. Cornette testified that on December 22,

1999 she was a 14-year-old seventh grader who was having a sleepover at A.S.'s house. The two girls decided to sneak out of the house and meet up with a boy acquaintance who lived in the area. After A.S.'s parents went to bed, Cornette and A.S. left the house and went to a local gas station to meet the boy. The boy did not show up and, after they called him from a payphone, the two girls started walking back to A.S.'s house. During the walk along County Road 1, a white or light-colored Jeep Cherokee pulled up and the male driver asked them if they needed a ride home. The girls declined the offer and the male drove off. However, as they walked farther up the road, Cornette saw the taillights of the parked vehicle and told A.S. they needed to run. The male driver jumped out from the side of the road and came after Cornette, grabbing her by the hair. Cornette managed to escape. Cornette looked back and saw the male driver approaching A.S. Cornette described the driver as white, with a mustache, brown hair, a little thinning on the top, and a little taller than Cornette, who was 5'9" at the time. Cornette tried to get help and eventually ran back to A.S.'s house and told A.S.'s father what had happened and he called 9-1-1. Cornette learned that A.S. had been released by the assailant, had walked to a family friend's house, and called authorities. Cornette and A.S.'s father took A.S. to the hospital emergency room for medical treatment.

{¶9} Cornette testified that in 2018 she was asked to participate in a police photographic lineup. She chose a photo from the lineup but told police that it had been nearly 20 years and the photo she selected was the closest to the person she saw that night back in 1999, but she could not be 100 percent certain. The photo Cornette identified was of Thacker from 1999. In the statement she gave to the police in the early morning

after the attack, Cornette stated that the vehicle was an older looking, brown, light tan, or white car.

{¶10}  A.S. testified that on December 22,1999 she was 14 years old and her best friend, Cornette, and she were having a sleepover at A.S.'s house. She and Cornette planned to sneak out of the house and meet up with friends at the local gas station. A.S. and Cornette left the house after midnight but the friends did not show up at the gas station. After waiting around for a while, A.S. and Cornette started walking back to A.S.'s house.  A man pulled up and asked if they wanted a ride and they said no. They pointed at a house and stated that they live at the nearby house so the man drove off.  But as they continued walking, they saw the vehicle with the lights on. A.S. and Cornette started running, but the man grabbed A.S. and she fell to the ground.

{¶11}  The man forced her into his vehicle and drove off with her, talking to her, telling her he was going to teach her a lesson. The man pulled his penis out of his pants, grabbed A.S.'s hair and tried to force her to perform oral sex. The man continued to drive until they reached a remote area with a big metal cylinder. The man forced A.S. to remove her clothes and then he tried to put his penis into her vagina and rectum.  Afterwards, he told her to put her clothes back on and told her she was not going to tell anyone because he could find her and kill her.  He released A.S. and she made her way to a family friend's house. She was dry heaving, throwing up, and collapsed at their house. She told them what had happened and they called her father. The police were notified and A.S. went to the hospital and made a police report.  A.S. described the man as having a receding hairline and that the vehicle he was driving was a light-colored, SUV-type of car with a

"bag phone" cellular phone. A.S. stated that the man was having difficulty with an erection but did insert his penis into both her vagina and rectum.

{¶12} The medical personnel working at the hospital on December 22, 1999 testified about the physical examination performed on A.S. and the steps taken to collect and preserve evidence for the police, which included swabs of A.S.'s vagina and rectum. The treating physician testified that A.S. had a tear in her hymen which indicated penetration during sexual assault.

{¶13} Ms. Kennedy, an expert witness in the field of forensic science with a specialty in DNA analysis, testified that she performed an analysis on the samples taken from A.S.'s vagina and rectum, obtained a profile, and entered them into CODIS in 2001. Ms. Jimenez, also an expert witness in the field of forensic science with a specialty in DNA analysis, testified that she obtained DNA samples from Thacker in 2018 and was alerted that it was consistent with a profile entered into CODIS in 2001. Ms. Jimenez then did a direct comparison with the two DNA samples, Thacker's 2018 DNA and the December 1999 rapist's DNA, and found that all 13 locations on the DNA were an exact match. The statistics were one in one trillion, which meant that the December 1999 DNA was an exact match to Frank Thacker.

{¶14} Detective Aaron Bollinger of the Lawrence County Sheriff's Department testified that in March 2018 he obtained a search warrant for Thacker's DNA and sent it to the Ohio Bureau of Criminal Investigation (BCI). He was notified that Thacker's DNA was a match to DNA from a December 22, 1999 rape. Detective Bollinger interviewed A.S. and Cornette and prepared a photographic lineup that included Thacker's photograph taken nearest in time to the December 1999 rape. Thacker's photograph was

the one Cornette picked out as the one most looking like the man who raped A.S. in 1999, though she stated that she could not be 100 percent certain. A.S. could not pick anyone out of the lineup with certainty.  Detective Bollinger also interviewed Thacker in April 2018, which was videotaped and played for the jury. Thacker denied any involvement in the 1999 rape, but admitted he had once owned a Jeep Cherokee and a cellular "bag phone." Detective Bollinger testified that he checked vehicles that were registered to Thacker over the years and found that in August 1999 Thacker purchased a taupe-colored,1994 Jeep Cherokee and that Thacker lived close to the vicinity where the offenses occurred.

{¶15}  Brandi Thacker testified that Frank Thacker was her father, that she lived with him at the residence that was in the vicinity where the offenses occurred and that he drove a very light, silvery-gold Jeep Cherokee, but that he gave it to her mother, Thacker's ex-wife, to drive.

{¶16}  Shortly after the jury began deliberations, Juror Twelve informed the trial court that she knew A.S. Juror Twelve stated that she had recently dated an ex-boyfriend of A.S., but did not know A.S.'s maiden name and did not realize she knew A.S. until the end of the trial. Juror Twelve stated that had she realized she knew A.S. during voir dire, she would have asked to be excused. However, she believed she could be a fair and impartial juror and did not have a negative view of A.S.  After both the state and Thacker agreed, the trial court excused Juror Twelve and substituted her with an alternate juror. Thacker moved for a mistrial.

{¶17}  The trial court separated and individually questioned each of the remaining jurors to determine whether Juror Twelve had provided any additional information to the other jurors that was not presented through the evidence at trial. The trial court also asked

each juror whether Juror Twelve said anything that would influence or affect their ability to continue to deliberate and be fair and impartial as a juror. Each of the jurors answered that Juror Twelve had not provided additional evidence and had not affected their ability to be fair and impartial. The trial court denied Thacker's motion for mistrial.

**{¶18}** The jury found Thacker guilty of two counts of rape, one count of kidnapping, and one count of abduction. The trial court merged the abduction and kidnapping counts and sentenced Thacker to ten years each for the two rape counts and one kidnapping count, to be served consecutively for a total of 30 years. The sentence was ordered to be served consecutive to a rape sentence Thacker was serving for an unrelated assault, for a total 57-year prison term.

## II. ASSIGNMENTS OF ERROR

**{¶19}** Thacker assigns the following errors[1] for our review:

> 1. Appellant's convictions for rape, kidnapping, and abduction were against the manifest weight of the evidence.
>
> 2. The trial court abused its discretion when it denied Appellant's motion for a dismissal of the indictment against him.
>
> 3. A mistrial should have been declared due to misconduct of a juror for failing to disclose her relationship to the alleged victim of the case.
>
> 4. Appellant's counsel was ineffective in his representation of the Appellant.
>
> 5. Cumulative errors committed during Appellant's trial deprived him of a fair trial and require a reversal of his convictions.

## III. LAW AND ANALYSIS

---

[1] Some of the assignments of error identified in the statement of the assignments of error are stated differently in the body of Thacker's brief. We use the version contained in the statement section of the brief. *See generally* App.R. 16(A)(3).

## A. Manifest Weight of the Evidence

**{¶20}** Thacker asserts that his convictions are against the manifest weight of the evidence because A.S. gave inconsistent testimony concerning penetration and there were inconsistencies between A.S.'s and Cornette's testimony concerning the color of the vehicle and their inability to positively identify Thacker in a photographic lineup.

### 1. Standard of Review

**{¶21}** In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. *State v. Phillips*, 4th Dist. Scioto No. 18CA3832, 2018-Ohio-5432, ¶ 23.

**{¶22}** To satisfy its burden of proof, the state must present enough substantial credible evidence to allow the trier of fact to conclude that the state had proven all the essential elements of the offense beyond a reasonable doubt. *See State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 22 (4th Dist.), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus (superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997) ). However, it is the role of the jury to determine the weight and credibility of evidence. *See State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before

it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility*. Id.; State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 18.

### 2. Evidence of Rape, Abduction, and Kidnapping

**{¶23}** Thacker contends that his convictions for rape, abduction, and kidnapping were unsupported by the evidence because A.S. initially testified that Thacker "never inserted his penis at any point during the assault against her." He argues that it was not until the state elicited testimony on redirect examination that A.S. testified that penetration occurred. Thacker also argues that there was not sufficient evidence that Thacker abducted or kidnapped A.S. because A.S. and Cornette gave inconsistent testimony about the color of the vehicle involved and could not positively identify him in the photographic lineup. He contends that the sole link between him and the crime was the CODIS DNA match, which occurred 18 years after the crime.

**{¶24}** Thacker was convicted of rape under R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct is defined in R.C. 2907.01(A) as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient

to complete vaginal or anal intercourse." Thacker challenges the penetration element of his rape convictions.

**{¶25}** A.S. testified that she was fully undressed and Thacker led her over to the metal cylinder and "bent me over and proceeded to try to put his penis in me any way that he could, vaginally and rec . . . rectally." A.S. testified that Thacker complained that A.S. was dry and that it was not working the way he wanted it to. On cross-examination A.S. testified that it seemed like Thacker was having difficulty with an erection:

> A. * * *And whenever he was actually trying to penetrate me, he was making comments about it. His inability to, you know, perform or get erect.
>
> Q. But you didn't feel it erect?
>
> A. I felt the pressure of him trying to force himself into me, but it was really cold and I was in shock and I went numb.

**{¶26}** On redirect examination, the state asked:

> Q. * * * whether his penis was erect or not, he inserted it into you?"
>
> A. Yes.
>
> Q. And you testified both into your vagina and in your rectum?
>
> A. Yes.
>
> Q. And, you'd never had sex before. You didn't have any idea what that would've felt like . . .
>
> A. No.
>
> Q. . . . at that point?
>
> Q. Um, No doubt that that happened that night to you?
>
> A. No, no doubt in my mind.
>
> Q. Pretty traumatic event?

A. Very!

**{¶27}** A.S.'s testimony established the element of penetration when she testified that Thacker put his penis into her vagina and rectum. Apart from A.S.'s testimony, the jury heard additional witness testimony that established penetration of both the vagina and rectum through circumstantial evidence. The treating physician who examined A.S. immediately following the assault testified that A.S. had a tear in the hymen as a result of the sexual assault and that vaginal penetration was necessary for the hymen to tear. The treating nurse testified that she took swabs from both A.S.'s vagina and rectum and turned them over to law enforcement; Ms. Kennedy and Ms. Jimenez, the DNA experts with BCI, testified that these swabs contained sperm that exactly matched Thacker's DNA.

**{¶28}** The jury considered the state's witnesses' testimony and DNA evidence and found them credible. " '[A] conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.' " *State v. Fletcher,* 4th Dist. Lawrence No. 14CA14, 2015–Ohio–1624, ¶ 28, quoting *State v. Cooper,* 170 Ohio App.3d 418, 2007–Ohio–1186, 867 N.E.2d 493, ¶ 17 (4th Dist.)*; State v. Fox*, 4th Dist. Washington No. 14CA36, 2015-Ohio-3892, ¶ 26.

**{¶29}** Thacker's abduction conviction under R.C. 2905.02(A)(1) and (B) required the state to show the following elements: "(A) No person, without privilege to do so, shall knowingly do any of the following: (1) By force or threat, remove another from the place where the other person is found; * * * (B) No person, with a sexual motivation, shall violate division (A) of this section." And, the kidnapping conviction under R.C. 2905.01(A)(4) required the showing of the following: "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means,

shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." Thacker challenges the jury's finding that he was the person who abducted and kidnapped A.S.

{¶30}  Both A.S. and Cornette testified that a male driving a light, white or tan SUV-type of vehicle approached them and offered to give them a ride. He eventually chased them, grabbing A.S., forcing her into the vehicle, and driving away with her. A.S. testified about the abduction, kidnapping, and subsequent rapes and the attempt to force her to perform oral sex during transport. Both A.S. and Cornette described the man as white, with brown receding hair. Though A.S. was unable to positively identify Thacker 19 years later, Cornette identified Thacker's photograph out of the lineup as looking most like the assailant, though she stated she could not be 100 percent certain. Cornette also described the vehicle as a Jeep Cherokee. Thacker's daughter confirmed that Thacker lived in the vicinity of the offenses and that he owned a light, champagne colored, silvery-gold Jeep Cherokee. A.S. testified that the same man who abducted her and drove her to a remote location was the same man who raped her at the remote location. Thacker's sperm was present inside A.S.'s vagina and rectum. Because the state proved that Thacker raped A.S., circumstantial evidence proved that Thacker was also the man who abducted and kidnapped A.S. There was no evidence presented that more than one assailant was involved in the crimes or that after some unknown male abducted and kidnapped A.S., Thacker suddenly appeared at the remote location and raped her.

**{¶31}** Thacker argues that there were "significant inconsistencies" in A.S.'s and Cornette's testimony "regarding the color of the vehicle in question." However, the record contains no inconsistencies. Both women testified that the vehicle was an SUV-type, with Cornette more specifically testifying that it was a Jeep Cherokee. Additionally, both women testified that it was light in color, either white, tan or light brown. According to the vehicle records, Thacker's vehicle was a "taupe" Jeep Cherokee. Thacker's daughter described it as a "champagne color" and "a very, very light, like, silvery gold color." The crimes occurred at night and the witnesses' descriptions of the color of the vehicle were consistently within the light-brown spectrum of colors. Each witness described an SUV-type of vehicle in a light shade of brown. Though 19 years after the event, neither woman could positively identify Thacker's photograph from the lineup, their testimony describing the assailant matched Thacker.

**{¶32}** Reviewing the record, we cannot say that this is an exceptional case where the evidence weighs heavily against the convictions, that the trier of fact lost its way, or that a manifest miscarriage of justice has occurred. Accordingly, the verdicts were not against the manifest weight of the evidence. Thacker's first assignment of error is overruled.

### B. Denial of Motion to Dismiss for Violation of Right to Speedy Trial

**{¶33}** Thacker contends that the trial court abused its discretion when it denied his motion to dismiss the indictment on speedy trial grounds. The crimes occurred in December 1999 but he was not indicted and arrested until May 2018. He asserts that the state had unjustifiably delayed the prosecution due to failure to properly investigate. Thacker contends that he was prejudiced by the delay because many years had passed

causing all persons involved to lose the sharpness of memory. Witnesses who might have provided alibi testimony and other information of assistance to his defense have been lost due to the passage of time. He also contends that he was indicted on felony charges in 2001, 2002, and 2006 but the state failed to obtain DNA samples from him then or failed to properly enter them into CODIS.

**{¶34}** The state opposed the motion arguing that Thacker's vague contention that memories fade over time was insufficient to establish actual prejudice. The state also argues that the statute that requires the state to collect a DNA specimen for felony arrests was not applicable to Thacker's prior felony arrests in 2001 through 2006 because it was enacted later and applied to felonies committed on or after July 1, 2011.

### 1. Standard of Review

**{¶35}** "Decisions to grant or deny a motion to dismiss on grounds of preindictment delay are reviewed for an abuse of discretion." *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33. "Appellate review of a trial court's decision on a motion to dismiss for a speedy trial violation involves a mixed question of law and fact. Generally, an appellate court will defer to a trial court's factual findings if competent and credible evidence supports those findings. However, an appellate court will review de novo a trial court's application of the law to those facts." (Citations omitted.) *State v. Phillips*, 2018-Ohio-1794, 111 N.E.3d 351, ¶ 9 (4th Dist.).

### 2. Legal Analysis of Speedy Trial Rights

**{¶36}** In his motion to the trial court, Thacker raised both constitutional and statutory speedy trial claims but failed to argue any statutory speedy trial violation. On appeal, he has abandoned any claim of a statutory speedy trial violation. Rather, he

claims that he was not indicted or arrested until May 2018 and his constitutional right to a speedy trial was violated by a preindictment delay in the commencement of the charges against him. The offenses occurred in December 1999, and he was not indicted until May 2018.

{¶37} A criminal defendant has a right to a speedy trial under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. "The Due Process Clause of the Fifth Amendment provides limited protection against preindictment delay." *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 97, citing *United States v. Lovasco*, 431 U.S. 783, 789–790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). These rights afford no protection to those who have not yet been accused unless preindictment delay has caused actual prejudice to the defendant:

> The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution "the right to a speedy and public trial." But on its face, the Sixth Amendment provides no protection to those who have not yet been accused; it does not "require the Government to discover, investigate, and accuse any person within any particular period of time." *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Statutes of limitations provide the ultimate time limit within which the government must prosecute a defendant—a definite point "beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *Id.* at 322, 92 S.Ct. 455. *See also United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (stating that statutes of limitations provide predictable limits to prevent initiation of overly stale charges). But when unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial despite the state's initiation of prosecution within the statutorily defined limitations period, the Due Process Clause affords the defendant additional protection. *Id.*

> This court has stated succinctly that preindictment delay violates due process only when it is unjustifiable and causes actual prejudice: "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law" under the United States and

Ohio Constitutions. *State v. Luck,* 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

And we have firmly established a burden-shifting framework for analyzing a due-process claim based on preindictment delay. Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Whiting,* 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99.

*State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 11-13.

**{¶38}** In *Jones*, the defendant was indicted for rape and kidnapping one day before the expiration of the 20–year statute of limitations. The trial court dismissed the charges based on preindictment delay and the Eighth District Court of Appeals affirmed. The Supreme Court of Ohio reversed and remanded the case on the ground that the appellate court applied an incorrect analysis of preindictment delay:

As to the appropriate test and the shifting burden of proof that applies to a claim of preindictment delay, the dissent got it right. It aptly noted that unjustifiable delay does not violate due process unless it results in actual prejudice. *Id.* at ¶ 51 (S. Gallagher, J., dissenting), citing *Luck,* 15 Ohio St.3d 150, 472 N.E.2d 1097, at paragraph two of the syllabus. Accordingly, the dissent reasoned, because Jones failed to carry his burden of establishing actual prejudice, the state had no obligation to present evidence justifying the delay in this case, *see Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 107 (denying relief on claim of unconstitutional preindictment delay without considering reasons for delay when defendant failed to establish prejudice).

*Id.* at ¶ 16 ("By considering the reasons for the state's delay before independently determining whether Jones established actual prejudice because of that delay, the Eighth District majority erred").

**{¶39}** The Court in *Jones* further explained that a finding of actual prejudice "involves ' "a delicate judgment" ' and a case-by-case consideration of the particular circumstances." *Id.* at ¶ 20, quoting *State v. Walls,* 96 Ohio St.3d 437, 2002-Ohio-5059,

775 N.E.2d 829, ¶ 52, quoting *United States v. Marion,* 404 U.S. at 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). "[S]peculative prejudice does not satisfy the defendant's burden." *Id.* "The '*possibility* that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice.' " (Emphasis sic.) *Id.* at ¶ 21, quoting *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127*,* ¶ 105.

> Those are "the real possibilit[ies] of prejudice inherent in any extended delay," and statutes of limitations sufficiently protect against them. That does not mean, however, that demonstrably faded memories and actually unavailable witnesses or lost evidence cannot satisfy the actual-prejudice requirement. (Citations omitted.) (Brackets sic.)

*Id.* "Each time this court has considered preindictment delay, we have scrutinized the claim of prejudice vis-à-vis the particular evidence that was lost or unavailable as a result of the delay and, in particular, considered the relevance of the lost evidence and its purported effect on the defense." *Id.* at ¶ 23. "Unlike a Sixth Amendment speedy-trial claim, no presumption of prejudice arises in the due-process context when a preindictment delay exceeds a particular length of time." *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 98. A reviewing court must scrutinize a defendant's claim of prejudice by "consider[ing] the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay." *Jones* at ¶ 20; *State v. Moore*, 2017-Ohio-1307, 88 N.E.3d 593, ¶ 25 (2d Dist.).

**{¶40}** Thacker argued in his motion that he was prejudiced because "the fact that many years have passed since this event will cause all person's [sic] involved, including the Defendant, to lose the sharpness of memory and recollection of events." He also argued that "witnesses who could account for activities" and "other information * * * has been lost either through the passage of time, by relocating to another residence or

possibly the death of a material witness." On appeal, Thacker argues he was prejudiced because, "the lead detective on the initial investigation had died during the 18 years which followed the alleged assault" and Thacker was "unable to present any hope of an alibi defense as a result of the delay" and "fading memories of all witnesses significantly impacted" his ability to defend himself.

{¶41} Thacker makes broad, speculative claims that witnesses' memories have faded and an investigator and "possibly" other witnesses have died. "But the possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." *Adams* at ¶ 105; *State v. Lewis*, 4th Dist. Athens No. 00CA10, 2001-Ohio-2496 (the mere allegation of faded memory does not rise to the particularized demonstration of prejudice necessary to constitute an unconstitutional pre-accusation delay; defendant must provide concrete proof that he will suffer actual prejudice at trial as a result of the government's delay in indicting the defendant). And, although he claims that an investigator died, he failed to identify what exculpatory testimony the investigator might have offered and thus has not established actual prejudice. "The death of a potential witness during the preindictment period can constitute prejudice, but only if the defendant can identify exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by other means." *Adams* at ¶ 103.

{¶42} Because Thacker fails to meet his burden to show actual prejudice, it is unnecessary for us to consider the reasons for the preindictment delay, such as whether the state had a statutory duty to obtain Thacker's DNA during his prior felony arrests in 2001, 2002, and 2006. *Adams* at ¶ 107; *Jones* at ¶ 16; *see also State v. Miller,* 8th Dist.

Cuyahoga No. 109543, 2021-Ohio-1878, ¶ 35 (involving a 17-year "cold case" delay in bringing rape charges, appellate court found that trial court abused its discretion in dismissing case, where defendant failed to show actual prejudice, "the burden-shifting analysis set forth by the Ohio Supreme Court in *Jones* made clear that, before courts review whether the state's delay was unjustifiable, the defendant must present evidence of actual prejudice. Miller did not identify any missing or unavailable evidence, * * * that would cut into the state's case and bolster his own.").

**{¶43}** The trial court did not abuse its discretion when it denied Thacker's motion to dismiss. We overrule Thacker's second assignment of error.

C. Trial Court's Denial of Motion for Mistrial

**{¶44}** Thacker contends that the trial court erred in failing to declare a mistrial when a juror failed during voir dire to disclose her relationship with the victim in the case.

**{¶45}** Juror Twelve informed the trial court that she knew A.S., but because she was unfamiliar with A.S.'s maiden name and did not easily recognize her, Juror Twelve did not realize she knew her until the end of the trial. Juror Twelve testified that she had very limited interaction with A.S. years ago and did not know her on a personal level but through a relationship she had with A.S.'s cousin and with A.S.'s ex-boyfriend. Juror Twelve testified that she could still be fair and impartial in weighing the evidence, and she had no negative feelings towards A.S. Juror Twelve stated that she had participated in some initial jury deliberations and had expressed an opinion about the case. With the agreement of the state and defense counsel, the trial court excused Juror Twelve and substituted an alternate juror. Thacker moved for a mistrial. The trial court separated and individually questioned each of the remaining jurors and determined that Juror Twelve

had not provided additional evidence and had not done anything or said anything that affected the remaining jurors' ability to be fair and impartial. The trial court denied Thacker's motion for mistrial.

### 1. Standard of Review

**{¶46}** Trial courts are entitled to wide latitude when considering motions for mistrial. *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 28. "A mistrial should not be ordered in a cause simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties." *Tingue v. State*, 90 Ohio St. 368 (1914), paragraph three of the syllabus. We review a trial court's grant or denial of a motion for mistrial for abuse of discretion, because the trial court is best situated to determine whether a mistrial is necessary. The phrase "abuse of discretion" implies that the court's decision was unreasonable, arbitrary, or unconscionable. *State v. Kulchar*, 4th Dist. Athens No. 10CA6, 2015-Ohio-3703, ¶ 38.

### 2. Legal Analysis of Juror's Relationship with Victim

**{¶47}** Thacker acknowledges that the trial court conducted an individual voir dire of each of the remaining jurors and they all stated that Juror Twelve had not done or said anything that could influence or affect their abilities to continue to deliberate and to be fair and impartial. However, he speculates that the jurors were prejudiced even though they each stated that they were not.

**{¶48}** To obtain a new trial, Thacker must demonstrate that Juror Twelve failed to honestly answer a material question on voir dire and that he was prejudiced by her

presence on the jury. To prove prejudice, Thacker must show that had Juror Twelve

stated that she knew A.S., he would have had a valid for-cause challenge.

> To obtain a new trial in a case in which a juror has not disclosed information during voir dire, the moving party must first demonstrate that a juror failed to answer honestly a material question on voir dire and that the moving party was prejudiced by the presence on the trial jury of a juror who failed to disclose material information. To demonstrate prejudice, the moving party must show that an accurate response from the juror would have provided a valid basis for a for-cause challenge.

> In determining whether a juror failed to answer honestly a material question on voir dire and whether that nondisclosure provided a basis for a for-cause challenge, an appellate court may not substitute its judgment for the trial court's judgment unless it appears that the trial court's attitude was unreasonable, arbitrary, or unconscionable.

*Grundy v. Dhillon,* 120 Ohio St.3d 415, 2008-Ohio-6324, 900 N.E.2d 153, paragraphs

one and two of the syllabus.

{¶49} Juror Twelve testified that she did not realize she knew the victim when she

was initially questioned about it during voir dire because she did not know the victim by

her maiden name. There was no evidence that Juror Twelve intentionally misled the trial

court and counsel or falsified her answer during the initial voir dire.

> However, a finding of juror misconduct does not necessarily require an explicit finding of dishonesty when a juror fails to answer a material question. * * *  "[i]f a juror remains mute when [s]he should answer, the effect of h[er] silence is the same as a false answer." Thus, a finding that a juror failed to respond to a material question, whether deliberately or through inadvertence, may have the same effect as a finding that a juror failed to answer honestly. (Citations omitted.) (Brackets sic.)

*State v. Roper*, 9th Dist. Summit No. 29466, 2021-Ohio-188, ¶ 27.

{¶50} Even though Juror Twelve admitted that she failed to accurately answer

the question about whether she knew A.S., Thacker cannot show prejudice because he

must show that he was prejudiced by her "presence on the trial jury."  By agreement of

defense counsel and the state, Juror Twelve was removed and an alternate substituted in her place. Thus, Juror Twelve was not present on the trial jury that rendered a verdict against him.

**{¶51}** Even assuming Juror Twelve had, however momentary, a "presence on the trial jury," Thacker has failed to show prejudice because to "demonstrate prejudice, the moving party must show that an accurate response from the juror would have provided a valid basis for a for-cause challenge." *Dhillon* at paragraph one of the syllabus. Here, Juror Twelve was asked twice, including once by defense counsel, whether she could be fair in deciding the case and both times she responded that she could. Such responses would cut against any basis for a for-cause challenge to Juror Twelve. *Dhillon* at ¶ 52, citing *State v. Jones*, 91 Ohio St.3d 335, 338, 744 N.E.2d 1163 (2001) ("The trial court was entitled to accept McCollum's assurances that he would be fair and impartial and that he would decide the case on the basis of the evidence"). "As long as a trial court is satisfied that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause." *Id.*

**{¶52}** Thacker's assertion that the jury was biased because Juror Twelve expressed her opinion about the case during the early stages of deliberation is unsupported by the record and is pure speculation. Each juror testified that Juror Twelve did not do or say anything that would prevent them from being fair and impartial and there is no basis in the record to question their testimony. After careful consideration of the record, we find nothing unreasonable, arbitrary, or unconscionable about the trial court's denial of Thacker's motion for a mistrial.

**{¶53}** We overrule his third assignment of error.

### D. Ineffective Assistance of Counsel

**{¶54}** Thacker contends that his conviction should be reversed based on ineffective assistance of counsel. Specifically, he argues that his trial counsel: (1) failed to bring to the trial court's attention that he had three felony indictments between 2001 and 2006 for which his DNA sample should have been obtained; and (2) failed to object to leading questioning about the penetration element of the rape offenses.

**{¶55}** To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his or her counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him or her of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Accord State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.

**{¶56}** When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland* at 689, 104 S.Ct. 2052. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

(Quotation omitted.) *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 61.

**{¶57}** "Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated." *State v. Walters,* 4th Dist. Washington Nos. 13CA33, 13CA36, 2014-Ohio-4966, ¶ 24*; State v. Jones,* 2018-Ohio-239, 104 N.E.3d 34, ¶ 21-24 (4th Dist.). We have repeatedly recognized that speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim*. E.g., State v. Dailey,* 4th Dist. Adams No. 18CA1059, 2018-Ohio-4315, ¶ 33 and cases cited therein.

### 1. Failure to Bring Forward his Three Prior Felony Arrests

**{¶58}** Thacker argues that his trial counsel was deficient for failing to bring his prior felony arrests, which he contends occurred in 2001, 2002, and 2006, to the trial court's attention to support his motion to dismiss on speedy trial grounds. He argues that the state should have obtained his DNA back then, matched it with the December 1999 rape offenses, and indicted him 17 years earlier. He contends that if the trial court had known this, it is likely that the trial court would have found that the state unjustifiably delayed in prosecuting the case.

{¶59} The state argues that the statutory provision requiring DNA collection from persons arrested for felonies applied only to persons arrested for felony offenses on or after July 1, 2011. Thacker's prior felony arrests were before 2011 and all were dismissed prior to trial.

{¶60} R.C. 2901.07(B)(1)(a) requires the following DNA collection:

On and after July 1, 2011, a person who is eighteen years of age or older and who is arrested on or after July 1, 2011, for a felony offense shall submit to a DNA specimen collection procedure administered by the head of the arresting law enforcement agency. The head of the arresting law enforcement agency shall cause the DNA specimen to be collected from the person during the intake process at the jail, community-based correctional facility, detention facility, or law enforcement agency office or station to which the arrested person is taken after the arrest. * * *.

This provision was added to R.C. 2901.07 by 2010 Sub. S.B. 77, effective July 6, 2010, and requires the state to collect DNA specimens from persons arrested on or after July 1, 2011 for a felony offense. Thus, the state correctly argues that it had no statutory right under this provision to collect DNA specimens from Thacker prior to July 1, 2011. Thacker's trial counsel's performance was not deficient for failing to highlight Thacker's prior felony arrests in support of his motion to dismiss on speedy trial grounds.

{¶61} Moreover, we have already determined that because Thacker failed to prove actual prejudice from the state's preindictment delay, the justification, or lack thereof, for the state's delay is not relevant; it does not matter whether the state should have obtained Thacker's DNA specimen earlier. Thus, aside from whether his trial counsel's performance was deficient for failing to bring up Thacker's prior felony arrests, Thacker's defense was not prejudiced.

### 2. Failure to Object to Leading Questions

**{¶62}** Thacker contends that his trial counsel was deficient for failing to object to the prosecutor's leading questions of A.S. on redirect concerning the penetration element of the rape offense.

**{¶63}** Evid.R. 611(C) states in part that, "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." Evid.R. 611(C) does not preclude the use of leading questions on direct examination; instead, the rule provides that "it is within the trial court's discretion to allow leading questions on direct examination." *State v. Jackson,* 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001). Consequently, the Supreme Court of Ohio had held that the failure to object to leading questions does not constitute ineffective assistance of counsel. *Id.; State v. Stairhime,* 3d Dist. Defiance No. 4–13–06, 2014–Ohio–1791, ¶ 46 ("we cannot find that any failure to object to any leading questions would rise to the level of ineffective assistance of counsel"); *State v. Williams*, 4th Dist. Jackson No. 15CA3, 2016-Ohio-733, ¶ 34.

**{¶64}** If Thacker's trial counsel had objected to the leading questions he contests on appeal and the trial court had sustained the objections, it is likely that the state would have elicited the same testimonial evidence from A.S. by further questioning. And, even without A.S.'s testimony, the state established the penetration element of the rape offenses with the testimony of the treating physician who testified that the sexual assault involved penetration due to the presence of the hymen injury and with the testimony of the DNA experts who testified about the presence of Thacker's sperm on swabs from A.S.'s vagina and rectum.

**{¶65}** Other courts similarly find no deficiency with defense counsel's failure to object to the prosecutor's leading questions of a state witness on direct:

> Because a trial court has broad discretion in allowing leading questions, counsel's decision not to object is within the realm of trial strategy. *Id.* Thus, an appellate court "need not second-guess the decision of appellant's defense counsel to not object to leading questions." *Id.,* see also *State v. Jackson,* 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001) (declining to find ineffective assistance of counsel from an attorney's failure to object to the state's excessive leading questioning).
>
> Review of the record reveals that counsel did not object to many of the leading questions posed by the state; however, we cannot say that counsel's failure to do so was not a strategic or tactical decision. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. *State v. Phillips,* 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). Furthermore, as for any of the leading questions, the state could have simply rephrased them. *Edwards* at ¶ 17. Thus, we cannot find that an objection to this testimony would have had a reasonable probability of success.

*State v. Jones*, 2019-Ohio-2134, 137 N.E.3d 661, ¶ 59-60 (10th Dist.).

**{¶66}** An attorney's decision as to whether to object at certain times during trial is presumptively considered a trial tactic or strategy that we will not disturb. *State v. Fisk,* 9th Dist. Summit No. 21196, 2003-Ohio-3149, ¶ 9; *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643, (1995). "Because 'objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the factfinder * * * competent counsel may reasonably hesitate to object in the jury's presence.' " (Citation omitted.) *State v. Mickens,* 10th Dist. Franklin No. 08AP–626, 2009-Ohio-1973, ¶ 29, quoting *State v. Campbell,* 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (1994); *State v. Blair*, 2016-Ohio-2872, 63 N.E.3d 798, ¶ 108 (4th Dist.).

**{¶67}** We find that trial counsel's failure to object to the state's leading questions was trial strategy and was not deficient. We overrule Thacker's fourth assignment of error.

E. Cumulative Error

**{¶68}** In his final assignment of error, Thacker contends that his right to a fair trial and due process were violated by the cumulative errors identified in his first four assignments of error.

**{¶69}** Under the cumulative-error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995), citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus; *State v. Ruble*, 2017-Ohio-7259, 96 N.E.3d 792, ¶ 75 (4th Dist.). "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Smith*, 2016-Ohio-5062, 70 N.E.3d 150, ¶ 106 (4th Dist.), citing *State v. Harrington*, 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, ¶ 57.

**{¶70}** The cumulative error doctrine does not apply where the defendant "cannot point to 'multiple instances of harmless error.' " *See State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 148 ("And to the extent that Mammone more broadly invokes the doctrine of cumulative error, that doctrine does not apply because he cannot point to 'multiple instances of harmless error.' " ); *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 124-125 (4th Dist.).

**{¶71}** Thacker argues that his trial counsel's and the trial court's cumulative errors violated his constitutional right to a fair trial. However, because none of Thacker's individual assignments of error have merit, he "cannot establish an entitlement to relief

simply by joining those claims together." *State v. Mammone,* 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 173; *see also State v. Thacker*, 4th Dist. Lawrence No. 18CA21, 2020-Ohio-4620, ¶ 131-133.

**{¶72}**  We overrule his fifth assignment of error.

## IV. CONCLUSION

**{¶73}**  We overrule Thacker's assignments of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**