[Cite as *State v. Pryor*, 2013-Ohio-5693.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2013CA00016 |
| | : | |
| MARCUS ISIAH PRYOR | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Stark County Court of
                            Common Pleas, case no. 2012CR1233

JUDGMENT:                   AFFIRMED

DATE OF JUDGMENT ENTRY:     December 16, 2013

APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

JOHN D. FERRERO, JR.                    KRISTINE W. BEARD
STARK CO. PROSECUTOR                    4450 Belden Village St. NW
RONALD MARK CALDWELL                    Suite 703
110 Central Plaza S., Suite 510         Canton, OH 44718
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Appellant Marcus Isiah Pryor appeals from the December 24, 2012 judgment entry of conviction and sentence entered in the Stark County Court of Common Pleas. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} Appellant and M.E. have been in a relationship off and on for three years and have a child together who was two years old at the time of these events. On July 23, 2012, appellant and M.E. had been "talking" and had texted each other throughout the day. M.E. saw appellant earlier but had no plans that evening. She made a pizza, put her child to bed, and fell asleep on the couch around 9:00 p.m. Around midnight M.E. woke up because her daughter was awake and brought her downstairs to join her on the couch. Both fell asleep.

{¶3} M.E. was next awakened by what she described as a "crack on the step." By the light of the stairwell she could see appellant inside the house, and she asked him what he was doing there. Appellant reportedly said, "I just want to talk to you." M.E. asked him how he got in, and he said he made a key. M.E. asked him to leave. Appellant told her he put their daughter to sleep in her bed upstairs.

{¶4} Appellant and M.E. began to argue about their relationship; M.E. testified appellant became angry and showed her a black and silver handgun. He pointed the gun at her and said she was going to "be with [him.]" Appellant looked at M.E.'s cell phone stating "If I look at this phone and I find something, it's over." M.E. told him there was nothing on her phone but appellant kept pointing the gun at her. Then he told her to take off her clothes and she complied. Appellant ordered M.E. to submit to oral and

vaginal sexual intercourse, at one point with the gun to her head. M.E. complied because he said he was going to kill her.

{¶5} Appellant does not have a car but M.E.'s car keys were on the dining room table and appellant was looking for them. He told her, "I'm going to put you in the trunk." M.E. thought he intended to kill her. He told her to walk out the front door and get in the car. She ran out the front door, followed by appellant, and they "tussled" for several minutes in the front yard. M.E. tried to get away from appellant and he tried to pull her back into the house. Finally M.E. ran up onto the porch of a neighboring duplex and banged on the door.

{¶6} The neighbor woman, who knows M.E. by sight but not well, eventually came to the door. She heard M.E. yelling "Help me, help me, it's [ ]" and banging on the door. M.E. was dressed in shorts and a tank top. She was hysterical and told the neighbor "He's trying to kill me." She also asked the neighbor to "look at him" to see that appellant had a gun. The neighbor grabbed M.E. and pulled her into the house. She briefly saw a person standing nearby outside, walking toward them, but she did not look to see whether he had a gun or not before she closed her door and locked it. The neighbor proceeded to call 911 as M.E. cried and repeated "my baby." Then someone started banging on the neighbor's door and M.E. ran and hid. The neighbor's husband tried to comfort M.E. as the neighbor spoke on the phone with the 911 operator; she had to ask M.E. for information to answer the operator's questions.

{¶7} The neighbor thought it took the police "a long time" to arrive. Once the police arrived, the neighbor watched to make sure they accompanied M.E. back inside her home, and then closed her door. She briefly spoke to the police again when they

asked her if she was the one who called 911. She said she had, and asked if everything was all right. The police told her they were not able to locate the suspect.

{¶8} M.E. described what happened to officers who arrived on the scene. She also called her mother and brother, who came to her home to take her to the hospital. The police collected some evidence from the house including a cell phone later identified as appellant's. M.E.'s own cell phone was missing. Her mother later called it and appellant answered.

{¶9} M.E. was taken to the hospital by family members and submitted to a sexual assault examination. The SANE nurse testified that in addition to gathering a sexual assault evidence kit from M.E., she also photographed some apparent injuries she observed: bruising on M.E.'s right shoulder and abrasions on both sides of her neck. The nurse's physical findings were consistent with the history related by M.E.

{¶10} Swabs from the sexual assault evidence kit were examined for D.N.A. evidence. Seminal fluid was located on vaginal, anal, and thigh swabs taken from M.E. Appellant was determined to be the source of the D.N.A. on the swabs. Fingernail scrapings from M.E. were also examined but no blood or foreign tissue was detected.

{¶11} Appellant did not testify or present evidence on his own behalf at trial but argued throughout that the sexual contact with M.E. was consensual.

{¶12} Appellant was charged by indictment with one count of aggravated burglary with a firearm specification, one count of kidnapping, and one count of rape with a firearm specification. (Appellant was also charged with misdemeanor counts of domestic violence and intimidation, to which he entered pleas of guilty outside the presence of the jury.) Appellant entered pleas of not guilty to the felony charges and

the case proceeded to trial by jury. Appellant moved for judgments of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. Appellant was found guilty of aggravated burglary, kidnapping, and rape but not guilty of the firearm specifications. The trial court sentenced appellant to an aggregate prison term of 12 years as follows: 9 years on Count II, rape, consecutive to 3 years on Count I, aggravated burglary, concurrent with 3 years on Count III, kidnapping. Appellant was also sentenced to two concurrent six-month terms on the misdemeanor counts of domestic violence and intimidation. Appellant was determined to be a Tier I sex offender.

{¶13} Appellant now appeals from the judgment entry of his convictions and sentences.

{¶14} Appellant raises five assignments of error:

**ASSIGNMENTS OF ERROR**

{¶15} "I. APPELLANT'S CONVICTIONS FOR AGGRAVATED BURGLARY, KIDNAPPING, AND RAPE ARE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."

{¶16} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE INTRODUCTION OF JAIL HOUSE TAPE RECORDED TELEPHONE CONVERSATIONS."

{¶17} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING THE 911 RECORDING."

{¶18} "IV.   THE CUMMULATIVE (*sic*) ERRORS COMMITTED DURING THE TRIAL DEPRIVED THE APPELLANT OF A FAIR TRIAL AND REQUIRE A REVERSAL OF APPELLANT'S CONVICTION AND SENTENCE."

{¶19} "V.  THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR A MISTRIAL."

**ANALYSIS**

I.

{¶20} Appellant asserts in his first assignment of error that his convictions are against the manifest weight and sufficiency of the evidence because they are based primarily upon the uncorroborated testimony of M.E.  We disagree.

{¶21} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶22} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶23} Appellant was found guilty of one count of rape pursuant to R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." He was also found guilty of one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), which states:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: The offender inflicts, or attempts or threatens to inflict physical harm on another[.]

{¶24} Finally, appellant was found guilty of one count of kidnapping pursuant to R.C. 2905.01(A)(4),which states, "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." "Sexual activity" includes the forced vaginal and oral intercourse alleged in this case pursuant to R.C. 2907.01(A) and (C).

{¶25} Appellant's challenges to the manifest weight and sufficiency of the evidence are based upon his repeated assertion the testimony of M.E. was "inconsistent and unreliable." We have reviewed the entire record and disagree with this characterization; moreover, it is well established determining the credibility of witnesses in within the province of the trier of fact. See *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶26} M.E.'s testimony about finding appellant in her home, unwelcome and uninvited, the ensuing angry confrontation, the forced sexual intercourse, and the "tussle" in the front yard are buttressed by the testimony of the neighbor, who discovered M.E. visibly hysterical banging on her front door, yelling that appellant was trying to kill her. The neighbor observed M.E.'s apparent fear: when M.E. thought appellant was banging on the neighbor's door, she hid. The SANE nurse corroborated evidence of visible injury including bruising to her right shoulder and abrasions to both sides of her neck. Sexual contact between M.E. and appellant was verified by the

sexual assault examination and resulting D.N.A. test; despite appellant's assertions, there is no evidence in the record the sexual contact was consensual.

{¶27} We conclude appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.

II.

{¶28} In his second assignment of error, appellant contends the trial court abused its discretion in admitting portions of recorded jail phone calls between appellant and M.E. We disagree.

{¶29} Before trial, appellant asked to plead to the misdemeanor counts of domestic violence and intimidation, arguing pleas to these counts would render parts of appellee's evidence irrelevant, to wit, appellant's telephone calls from jail to M.E. in which he apologizes to the victim repeatedly. Appellee objected, arguing despite any pleas to the misdemeanors, the jail calls were still highly relevant to the felony charges of rape, kidnapping, and aggravated burglary. The trial court initially determined it would listen to the recordings outside the presence of the jury and determine their admissibility in the context of the evidence presented at trial.

{¶30} Later, prior to M.E.'s testimony, the trial court listened to the calls. Appellant argued they should be excluded because they are prejudicial and it is not clear why appellant is apologizing to M.E.; the apology might relate to other unrelated domestic violence incidents. The trial court disagreed and admitted the calls, especially because appellee edited out references to other bad acts by appellant. The trial court noted appellant was free to cross-examine M.E. about the history between the two to

clear up any confusion over the conversations on the recordings. Overall, the trial court found the probative nature of the calls outweighed any prejudice.

{¶31} We have reviewed the recorded calls and find the trial court did not abuse its discretion in admitting them. We note appellant clearly makes reference to the "[expletive]-up things" he did to M.E., states that he would never want the same things to happen to their daughter, and says he hasn't told anyone at the jail "what charges are on" him because he is ashamed of what he's done. The admission or exclusion of evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). To be admissible, a tape recording must be authentic, accurate, and trustworthy. *State v. Were*, 118 Ohio St.3d 448, 2008–Ohio–2762, 890 N.E.2d 263, ¶ 109, citing *State v. Rogan*, 94 Ohio App.3d 140, 148, 640 N.E.2d 535 (2nd Dist.1994).

{¶32} Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R.401. Generally, all relevant evidence is admissible, and irrelevant evidence is inadmissible. Evid.R. 402. Appellant's statements in the jail calls are thus relevant. The appellant's out-of-court statements, offered against appellant by appellee, are admissible pursuant to Evid.R. 801(D)(2)(a) as a statement against interest. *State v. Johnson*, 12th Dist. Butler No. CA2002-04-100, 2003-Ohio-2540, at ¶ 21. Appellant does not contest the authenticity of the jail calls; thus, the statements are admissible.

{¶33} Appellant argues, though, the trial court erred in failing to exclude the statements pursuant to Evid.R. 403(A), which provides that otherwise relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." A trial court has broad discretion to determine whether relevant evidence must be excluded in accordance with Evid.R. 403(A) because "the exclusion of relevant evidence under Evid.R. 403(A) is even more of a judgment call than determining whether the evidence has logical relevance in the first place." *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, at ¶ 40.

{¶34} Admission of portions of the jail calls was not an abuse of the trial court's discretion. We agree the evidence is relevant because the jury could infer appellant's apologies to M.E. on the tapes indicate consciousness of guilt. "[C]ourts in Ohio * * * have affirmed that apologies constitute a "consciousness of guilt." *State v. Tvaroch*, 11th Dist. Trumbull No. 2012-T-0008, 2012-Ohio-5836, 982 N.E.2d 751, appeal not allowed, 134 Ohio St.3d 1508, 2013-Ohio-1123, 984 N.E.2d 1102, citing *State v. Tichaona,* 11th Dist. Portage No. 2010–P–0090, 2011-Ohio-6001, ¶ 42; *State v. Sims,* 12th Dist. Butler No. 2007–11–300, 2009-Ohio-550, ¶ 24; *People v. Grathler,* 368 Ill.App.3d 802, 808, 306 Ill.Dec. 879, 858 N.E.2d 937 (5th Dist.2006); *Commonwealth v. Martin,* 59 Mass App.Ct. 1109, 797 N.E.2d 947 (2003). Moreover, appellant acknowledges pending criminal charges in reference to M.E. and asks her whether she's received his letters.

{¶35} All relevant evidence is of course "prejudicial," but the record reveals the trial court properly admitted the portions of these jail calls after careful consideration of

their admissibility. See, *State v. Sowell*, 10th Dist. Franklin No. 06AP-443, 2008-Ohio-3285, ¶ 81-82, appeal not allowed, 120 Ohio St.3d 1421, 2008-Ohio-6166, 897 N.E.2d 655.

{¶36} Appellant's second assignment of error is overruled.

III.

{¶37} In his third assignment of error, appellant argues the trial court abused its discretion in allowing appellee to play the recording of the neighbor's 911 call for the jury. We disagree.

{¶38} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. We review the trial court's decision with an abuse-of-discretion standard. See *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989); *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). A statement which is otherwise considered hearsay may be admissible as an excited utterance when the following four criteria are met: "(1) an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event." *In re C.C.*, 8th Dist. Cuyahoga Nos. 88320, 88321, 2007-Ohio-2226, ¶ 50, citing *State v. Brown*, 112 Ohio App.3d 583, 601, 679 N.E.2d 361 (12th Dist.1996).

{¶39} The trial court properly concluded the statements on the 911 call were excited utterances. Appellant objects to M.E.'s statements that could be overheard on the call, although the neighbor spoke with the operator and related what M.E. told her.

The evidence of M.E.'s emotional, "hysterical" state when she interacted with the neighbor is sufficient to find the statements on the 911 call admissible as excited utterances. We have reviewed the recording of the 911 call and M.E. is clearly distinguishable over the neighbor's words, crying hysterically, telling the neighbor word for word what transpired as the neighbor relates the information to the operator.

{¶40} Appellant's third assignment of error is overruled.

IV.

{¶41} In his fourth assignment of error, appellant argues he was deprived of a fair trial by cumulative errors committed throughout his trial. We disagree.

{¶42} In *State v. Garner,* 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995), the Ohio Supreme Court held pursuant to the cumulative error doctrine "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal."  With respect to appellant's arguments that we have already addressed supra (admission of recordings of the jail and 911 calls), we do not find multiple instances of harmless error triggering the cumulative error doctrine.  *State v. Scott*, 5th Dist. Richland No.11CA80, 2012-Ohio-3482, ¶ 75-76, appeal not allowed, 133 Ohio St.3d 1491, 2012-Ohio-5459, 978 N.E.2d 910.

{¶43} Appellant further raises three additional issues under this assignment of error: opinion testimony by M.E.'s mother that appellant raped her daughter; the responding police officer's hearsay statement about what M.E. told him; and a detective's statement that an unrelated warrant for appellant's arrest existed at the time

of the investigation. Because appellant did not separately assign these issues as error or provide any supporting authority for his contentions, we reject them pursuant to App.R. 12(A)(2) and App.R. 16(A)(7). *State v. Blankenship*, 9th Dist. Summit No. 18871, unreported, 1998 WL 852632, *11 (Dec 09, 1998), appeal not allowed, 85 Ohio St.3d 1443, 708 N.E.2d 209 (1999).

{¶44} Appellant's fourth assignment of error is overruled.

V.

{¶45} In his fifth assignment of error, appellant argues the trial court should have granted his motion for mistrial. We disagree.

{¶46} In the instant case, appellant moved for mistrial upon Detective Monter's spontaneous statement that he learned appellant had a warrant for his arrest when he was looking for him in connection with the instant investigation. The trial court immediately instructed the jury to disregard the statement and overruled appellant's motion for mistrial.

{¶47} It was not unreasonable, arbitrary, or unconscionable for the trial court to admonish the jury to ignore the stricken testimony rather than grant a mistrial. Curative instructions are presumed to be an effective way to remedy errors that occur during trial. *State v. Treesh,* 90 Ohio St.3d 460, 480, 2001-Ohio-4, 739 N.E.2d 749. In *State v. Ahmed,*103 Ohio St.3d 27, 42, 2004-Ohio-4190, 813 N.E.2d 637, the Ohio Supreme Court noted the following in determining a trial court properly failed to sua sponte declare a mistrial:

> The determination of whether to grant a mistrial is in the discretion
>
> of the trial court. *State v. Glover* (1988), 35 Ohio St.3d 18, 19, 517

N.E.2d 900; *State v. Brown,* 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 42. "[T]he trial judge is in the best position to determine whether the situation in [the] courtroom warrants the declaration of a mistrial." *Glover,* 35 Ohio St.3d at 19, 517 N.E.2d 900; see, also, *State v. Williams* (1995), 73 Ohio St.3d 153, 167, 652 N.E.2d 721. This court will not second-guess such a determination absent an abuse of discretion.

{¶48} We find the same to be true here. "The trial judge in this case gave a short, authoritative instruction to the jury * * * that sufficed to remedy any possible error regarding the struck testimony." *State v. Allen*, 5th Dist. Delaware No. 2009-CA-13, 2010-Ohio-4644, ¶ 250, appeal not allowed, 127 Ohio St.3d 1535, 2011-Ohio-376, 940 N.E.2d 987. "A trial jury is presumed to follow the instructions given to it by the judge." *Beckett v. Warren,* 124 Ohio St.3d 256, 2010–Ohio–4, 921 N.E.2d 624, ¶ 18.

{¶49} We find no abuse of discretion in the trial court's decision not to grant a mistrial. Appellant's fifth assignment of error is overruled.

### CONCLUSION

{¶50} Appellant's five assignments are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By:  Delaney, J. and

Gwin, P.J.

Hoffman, J., concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN