[Cite as *State v. Maynard*, 2025-Ohio-4943.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                          :
                                        :       Case No. 23CA4048
    Plaintiff-Appellee,                 :
                                        :
v.                                      :
                                        :
COLBY MAYNARD,                          :       DECISION AND JUDGMENT
                                        :       ENTRY
    Defendant-Appellant.                :       **RELEASED: 10/21/2025**
_____

APPEARANCES:

Karyn Justice, Portsmouth, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay Willis, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____

Wilkin, J.

{¶1} This is an appeal of a Scioto County Court of Common Pleas judgment entry in which Colby Maynard ("Maynard") was convicted of one count of aggravated trafficking in drugs (methamphetamine), one count of trafficking in heroin, and one count of trafficking in a fentanyl-related compound. On appeal Maynard contends the trial court erred when it denied his motion for mistrial. In addition, Maynard argues the convictions are against the manifest weight and sufficiency of the evidence. After reviewing the parties' arguments, the record, and the applicable law, we find no merit to his assignments of error and affirm the judgment of the trial court.

BACKGROUND

{¶2} On November 23, 2020, Sergeant Drew Kuehne ("Kuehne") of the Ohio State Highway Patrol was traveling southbound on U.S. 23, south of Lucasville, when

he saw a silver vehicle make an unsafe lane change and also cross over the fog line on the right side of the roadway. Kuehne noticed multiple people were in the car and that the vehicle registration was from Kentucky. Kuehne stopped the car for the violation.

{¶3} When he approached the passenger side of the vehicle, Kuehne noticed fairly quickly that the vehicle occupants seemed excessively nervous. Kuehne observed that the driver, Jaime Young ("Young"), was breathing heavily and speaking rapidly. Further, Young's voice seemed to tremble at times. Justin Crum ("Crum"), who was the front-seat passenger, made zero eye contact, which in Kuehne's experience was unusual behavior for a routine traffic stop. Kuehne also noticed Crum's hands, where the veins would be, had numerous cuts and sores. In Kuehne's experience these types of sores are associated with narcotics or meth use. Crum eventually admitted to using drugs.

{¶4} Kuehne determined that the car belonged to Crum's mother. When Kuehne questioned Young about the other occupants of the car, she told him that Crum was her boyfriend but she seemed slow to identify the backseat passengers, or that she was unfamiliar with their names. She said that the passengers were friends of Crum and identified them as Maynard and Brittany Collins ("Collins"). When Kuehne asked Young about her destination, she indicated the group was returning from a trip to Columbus from Kentucky. Young told Kuehne that she had to sign forms related to her recently deceased father's estate. Kuehne asked Young if there was anything illegal in the car, and she said "I don't think…uh…no, no." Young later said that Crum could be a "druggie" if he had a "secret life." She also said that needles might be found in the car.

{¶5} While Kuehne was questioning Young, Ohio State Highway Patrol Trooper and K-9 Handler Ryan Day ("Day") arrived on the scene to assist Kuehne. When approaching the vehicle, Day could see one of the rear passengers (Collins) moving around a lot, including her head and shoulder area. He therefore went up to the vehicle, opened the back seat passenger door, and saw that Collins had her hand completely down her pants. Collins was removed from the car. When Collins was asked why her hand was down her pants, she indicated that she had some type of surgery. The area Collins pointed to was on the side of her body whereas Day saw that Collins' hand was in her groin area, like her crotch. Her pants were unsnapped and unzipped. Day also noticed that the group provided conflicting stories about their trip – one said they were just along for the ride, while Collins first said they were coming from Columbus, then later said they were coming from Kentucky to visit family. The drive roundtrip was over six hours long.

{¶6} Kuehne also saw a bulge down the front of Collins' pants. Nevertheless, Collins kept saying, "I don't have anything, I don't have anything." Kuehne told Collins he believed she did have something, and eventually Collins surrendered a package of suspected drugs to him. When Day had first removed Collins from the car, Young began crying in the backseat of Kuehne's cruiser where she had been seated during the stop.

{¶7} The troopers thoroughly searched the car and found no more contraband. They submitted the package of contraband to the lab. The analysis revealed methamphetamine exceeding 26 grams; heroin/fentanyl exceeding 1 gram, and fentanyl exceeding 2 grams—the total amount exceeded personal use amounts.

{¶8} On June 9, 2021, Maynard, along with his co-defendants (Collins, Crum, and Young), were indicted with six counts:  Count 1, aggravated trafficking in drugs (methamphetamine), a second-degree felony, in violation of R.C. 2925.03(A)(2) and (C)(1)(d); Count 2, trafficking in heroin, a fourth-degree felony, in violation of R.C. 2925.03(A)(2) and (C)(6)(c); Count 3, trafficking in a fentanyl-related compound, a fourth-degree felony, in violation of R.C. 2925.03(A)(2) and (C)(9)(c), Count 4, aggravated possession of drugs (methamphetamine), a second-degree felony, in violation of R.C. 2925.11(A) and (C)(1)(c); Count 5, possession of heroin, a fourth-degree felony, in violation of R.C. 2925.11(a) and (C)(6)(b); and Count 6, possession of a fentanyl-related compound, a fourth-degree felony, in violation of R.C. 2925.11(A) and (C)(11)(b).

{¶9} At the trial with co-defendant Crum, the State called witnesses co-defendant Young, Kuehne, Day, Sergeant Jodie Conkel, who authenticated certain jail phone calls Maynard made, and the chemical laboratory supervisor who testified about the weight, properties, and identity of the drugs.

{¶10} During the trial, the attorney for co-defendant Crum asked Young why she was "let go" by the troopers instead of being arrested at the traffic stop.  The State asked to approach the bench, and a sidebar ensued.  The following discussion took place:

> COURT:  So, I'm getting a little nervous.  Three of the four left, Maynard didn't.  I'm going to assume Maynard had a warrant.
>
> PROSECUTOR HUTCHISON:  He did and we are staying away from that. So, we need to stop talking about this at this point.

***

PROSECUTOR HUTCHISON:  And we have told our witnesses we're not talking about that.

COURT:  And so, I need to be careful of why Maynard is the only one who didn't leave on his own.

*** 

COURT:  So, I'm just saying we need to be careful as don't, don't, I don't want to get into why Maynard didn't leave with everybody.  Okay?  So, if you can, I don't know where else you want to go with, I, I can't have people saying that I don't know what Maynard's going to do as far as testifying's concerned, but I can't have.  I don't want to jeopardize Maynard's case that he had a warrant outstanding.  Okay.

*** 

PROSECUTOR LOESCH:  While we are talking about that, it's probably a good time to bring it up, we are not going to play the portion [of the video] where they talk about they are taking a warrant.  That's at the end of the video.  However, at one point, you do see on this video for a period of time that Maynard is handcuffed.  Now, I don't think it's a big issue because you also see Collins handcuffed in this video.

Again, at the end of witness Young's testimony, without prompting by either defense counsel, the State broaches the issue about the part of the video of the traffic stop referencing the warrant not being played for the jury.  A discussion ensues about the warrant and Maynard being in handcuffs.  After the discussion the trial court states, "Um, I, if the state will cut off any mention of the warrant."  Prosecutor Loesch responds, "We will do that."  And Maynard's defense attorney says, "Then I'm satisfied."

{¶11}  Despite these discussions, Trooper Day referred to the warrant during his testimony:

STATE:  Okay.  What else did you do with this matter before you cleared the scene?

WITNESS DAY:  I don't recall doing much of anything after the drugs were surrendered to Sergeant Kuehne and I'm, at this point I'm done because there was one, Mr. Maynard had a warrant so he was placed

At the time, Maynard's trial counsel promptly objected, asked to approach the bench, and stated, "[t]hat's exactly what we've been trying to avoid this whole trial. I ask for a mis-trial." The State explained it had instructed the State's witnesses not to mention the warrant. The trial court denied the motion for mistrial, but instructed the jury, "[l]adies and gentlemen, I'm going to order, instruct you that you're not to consider for any purpose the testimony of any warrant in this case. It's totally irrelevant. It should not be considered for any purpose."

{¶12} After Day finished testifying, counsel for Maynard asked to approach the bench and informed the trial court that, according to his client (Maynard), four jurors were writing in their notebooks right after Day mentioned the warrant. The trial court responded that he had already instructed the jury to disregard the remark. The trial court mentioned that an additional instruction might highlight the testimony.

{¶13} When the State rested, the defense moved for a motion for acquittal which was denied. Maynard, through counsel, renewed his motion for mistrial based on Trooper Day's testimony. The trial court overruled the motion again and stated it would further instruct the jury to disregard the remark; however, the defense declined further instructions regarding the warrant remark.

{¶14} After hearing the evidence and reviewing exhibits, including the dash-cam video of Kuehne, the jury found Maynard guilty of all counts. The trial court merged Counts 4, 5, and 6 with Counts 1, 2, and 3, respectively, and the State elected for the trial court to sentence on Counts 1, 2, and 3 – the trafficking counts. The trial court sentenced Maynard to six to nine years on Count 1, twelve months each on Counts 2 and 3. The trial court ran Counts 2 and 3 concurrently to one another. The trial court

ran Count 1 consecutive to Count 3 for a total sentence of seven to ten years, six years

of which were mandatory.  Maynard timely appealed the judgment entry of conviction

and sentencing.

ASSIGNMENTS OF ERROR

I.      THE COURT ERRONEOUSLY DENIED APPELLANT'S MOTION FOR A MISTRIAL.

II.     APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

First Assignment of Error

**{¶15}** In his first assignment of error, Maynard contends that the trial court

abused its discretion when it denied his motion for mistrial after the State's witness,

Day, referenced the fact that Maynard had a warrant.  He reasons this evidence was

prejudicial because it violated Evid.R. 404(B), and that the curative instruction did not

remedy the error because the jurors, according to Maynard, took notes at the time Day

mentioned the warrant.  The State responds that the trial court's curative instruction

remedied any possible error.  The State also points out that it had instructed its witness

not to reference the warrant.  Further, the State highlights that defense counsel

acknowledged the State's efforts to avoid the fact of a warrant being admitted into

evidence.  The State also introduced evidence in its case that Maynard made certain

incriminating calls from jail, so the jury already knew, at least from that fact, that

Maynard had spent some time in jail.

A.  Law.

**{¶16}** "In general, the grant or denial of a motion for a mistrial rests in a trial

court's sound discretion and should not be disturbed on appeal absent an abuse of that

discretion." *State v. Houk,* 2020-Ohio-1547, ¶ 9 (4th Dist.), citing *State v. Treesh*, 90

Ohio St.3d 460, 480 (2001).  "Trial courts are entitled to wide latitude when considering

motions for mistrial."  *State v. Thacker,* 2021-Ohio-2726, ¶ 46 (4th Dist.), citing *State v.*

*Gunnell*, 2012-Ohio-3236, ¶ 28. "A trial court must declare a mistrial only 'when the

ends of justice so require and a fair trial is no longer possible.' " *State v. Adams*, 2015-

Ohio-3954, ¶ 198, quoting *State v. Garner*, 74 Ohio St.3d 49, 59 (1995); *accord State v.*

*Conway*, 2006-Ohio-791, ¶ 160 ("The granting of a mistrial is necessary only when a fair

trial is no longer possible").  Thus, " '[a] mistrial should not be ordered in a cause simply

because some error has intervened.  The error must prejudicially affect the merits of the

case and the substantial rights of one or both of the parties.' " *Thacker* at ¶ 46, quoting

*Tingue v. State*, 90 Ohio St. 368 (1914), paragraph three of the syllabus.

## B.  Analysis

**{¶17}**  Maynard argues that the trial court abused its discretion when it denied his

motion for mistrial because the trial court had admonished the State throughout the

proceedings not to mention the warrant.  Actually, the possibility of Maynard's prior

warrant being brought before the jury came because co-defendant Crum's counsel

began to inquire about the fact the other co-defendants were free to leave after the

traffic stop and it was the State that interjected before such testimony could be elicited

and brought up the issue of the warrant with the trial court.  The State also mentioned

the issue of Maynard being in handcuffs in portions of the video but pointed out that co-

defendant Collins also had handcuffs on in the video.  When Trooper Day did mention

the warrant, the State explained that the reference to the warrant was inadvertent and

Maynard's counsel agreed.  Maynard also asserts that the State introduced during trial

certain jail phone calls he made, which referenced a different case. However, it appears from the discussions at the bench that any irrelevant references were muted when played before the jury.

{¶18} The State directs us to a Fifth District case, *State v. Holmes,* 2005-Ohio-1481. In *Holmes*, a police officer mentioned a warrant for a criminal charge brought against the defendant but for which he was not indicted, despite an order to preclude such evidence. *Holmes* at ¶ 31. In that case, the defense counsel immediately objected, and the trial court shortly after stated, "disregard," to the jury. *Holmes* at ¶ 46. The defense moved for a mistrial because the trial court specifically instructed the state not to mention the warrant after the defense's motion in limine had been granted. The trial court overruled the motion for mistrial and instead gave a curative instruction to the jury to disregard the evidence. *Holmes* at ¶ 46-47. The Fifth District held the trial court did not abuse its discretion, explaining that "[a] curative instruction is an appropriate remedy, rather than a mistrial, for inadvertent answers given by a witness to an otherwise innocent question." *Holmes* at ¶ 52, citing *State v. Mobley,* 2002-Ohio-1792 *2 (2d Dist.) The Fifth District also reasoned, "a jury is presumed to follow curative instructions given by the trial court and therefore a trial court sustaining an objection and giving a curative instruction has been held to be enough to cure the taint from an improper statement." *Id.,* citing *State v. Garner,* 74 Ohio St.3d 49, 59 (1995).

{¶19} Maynard contends that *Holmes* is distinguishable because there, the remark was only one inadvertent comment, whereas the State in the instant case was advised throughout the trial not to mention the warrant; however, it presented a video of Maynard in handcuffs, phone calls when Maynard was obviously in jail, and some

evidence that other co-defendants were allowed to leave the scene.    He reasons in the instant case, unlike *Holmes*, a mistrial should have been granted.   We disagree.

**{¶20}**  While we acknowledge that Evid.R. 404(B) provides that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith[,] this case at bar is actually quite analogous to *Holmes.*  In fact, in the instant case, there is some indication that the State, and not the trial court or defense, initiated the sidebars about the possible admission of this evidence, and attempted to avoid it.  Further, in the instant case, like *Holmes,* the trial court immediately gave a detailed instruction to disregard to the jury, and the defense declined the trial court giving a further instruction at the close of evidence.  Finally, when defense counsel renewed his motion for mistrial at the close of evidence, he cited *only* Day's remark as objectionable.

**{¶21}**  Even if the trial court abused its discretion by not declaring a mistrial, Maynard has not demonstrated how he was so prejudiced that he did not receive a fair trial.  We find Trooper Day's reference to the warrant was an inadvertent, isolated reference.  The trial court gave a short, authoritative instruction to the jury, and the jury is presumed to follow it.  Finally, we have determined as set forth in our discussion regarding Maynard's second assignment of error, that substantial evidence showed Maynard's guilt.  Courts have held that inadvertent or brief references to warrants or other incarceration does not warrant a mistrial if curative instructions are given and other testimony and evidence shows a defendant's guilt.  *See, e.g., State v. Milligan,* 2021-Ohio-1071, ¶ 31 (6th Dist.) citing *State v. Trimble,* 2009-Ohio-2961, ¶ 175 ("[c]ourts do not declare a mistrial based on the mere mention of prison, rather, lacking

demonstration of substantial prejudice, the error may be remedied with a curative instruction."); *State v. Pryor,* 2013-Ohio-5693, ¶ 45-49 (5th Dist.) (court did not abuse its discretion in issuing curative instruction instead of granting mistrial when detective referred to fact defendant had a warrant); *State v. Southam,* 2012-Ohio-5943, ¶ 12-13 (3d Dist.) (upholding denial of mistrial despite officer's statement that defendant "ended up having a couple of warrants," when the statement was brief, objected to, and the trial court issued a general instruction to disregard any statements for which the trial court sustained objections); *State. v. Sullivan,* 2011-Ohio-6384, ¶77-82 (10th Dist.) (trial counsel was not ineffective for not moving for a mistrial when a detective testified that defendant had a warrant issued pursuant to a probation violation because the trial court issued a curative instruction so a motion for mistrial would have been futile).  We, therefore, find Maynard's first assignment of error to be without merit.

Second Assignment of Error

**{¶22}**  In his second assignment of error, Maynard contends that the guilty verdicts are against the manifest weight of evidence and the sufficiency of evidence. Maynard asserts that the State relied primarily on Young's testimony regarding Maynard's knowledge of the drugs, which he says is unreliable.  He goes on to state that the jail phone calls do not necessarily show he was aware that there were drugs in the car on the day in question.  The State responds that sufficient credible evidence supports the verdict.  The State also argues that Maynard was not only a principal actor, but also complicit in the offenses.

A.  Law.

**{¶23}**   When reviewing whether the evidence is sufficient to sustain a conviction, the focus is on the adequacy of the evidence. *See State v. Sims*, 2023-Ohio-1179, ¶ 115 (4th Dist.). Thus, "[t]he standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id*.

**{¶24}**  In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

**{¶25}**  The weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 2014-Ohio-1966, ¶ 132. The trier of fact "is free to believe all, part or none of the testimony of any witness," and we "defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to

weigh their credibility." *State v. Dillard*, 2014-Ohio-4974, ¶ 28 (4th Dist.), citing *State v. West*, 2014-Ohio-1941, ¶ 23 (4th Dist.).

**{¶26}** In addition, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses." *State v. Chancey*, 2015-Ohio-5585, ¶ 36 (4th Dist.), citing *State v. Wilson*, 2014-Ohio-3182, ¶ 24 (9th Dist.), citing *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.). Moreover, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences (sic.) do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Corson*, 2015-Ohio-5332, ¶ 31 (4th Dist.), quoting *State v. Proby*, 2015-Ohio-3364, ¶ 42 (10th Dist.), citing *State v. Gullick*, 2014-Ohio-1642, ¶ 10 (10th Dist.).

**{¶27}** A finding that a conviction is supported by the manifest weight of the evidence is "also dispositive of the issue of sufficiency." *Sims*, 2023-Ohio-1179, ¶ 120 (4th Dist.), citing *State v. Waller*, 2018-Ohio-2014, ¶ 30 (4th Dist.).

**{¶28}** We note at the outset that the trial court merged Maynard's possession convictions with the trafficking convictions, and the State elected that Maynard be sentenced on the trafficking counts. So, here we concern ourselves with the trafficking convictions. Even so, a trafficking conviction must consider the offender's possession of the drugs "because to sustain an R.C. 2925.03(A)(2) trafficking conviction as principal offender, the state must also prove that the defendant had control over, i.e., possessed, the illegal substance." *Foster* at ¶ 22, citing *State v. Cabrales,* 2008-Ohio-1625, ¶ 40, quoting R.C. 2925.01(K) (in order to ship, transport, deliver, distribute, etc., "the

offender must 'hav[e] control over' " the illegal substance); *see also, State v. Jones,* 2011-Ohio-1108, ¶ 11 (4th Dist.).

**{¶29}** R.C. 2925.03(A)(2) provides, in pertinent part, "(A) [n]o person shall knowingly do any of the following * * * (2) [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

**{¶30}** "Possession" is generally defined as "having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K); *State v. Bennett,* 2024-Ohio-4557, ¶ 35, (4th Dist.). "Possession may be actual or constructive." *Bennett* at ¶ 35 citing *State v. Gavin*, 2015-Ohio-2996, ¶ 35, (4th Dist.), quoting *State v. Moon*, 2009-Ohio-4830, ¶ 19, (4th Dist.). "Actual possession exists when circumstances indicate that an individual has or had an item within his immediate physical possession[.]" *Id.* citing *State v. Kingsland*, 2008-Ohio-4148, ¶ 13, (4th Dist.). Constructive possession, on the other hand, "exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Id.* citing *Gavin* at ¶ 35.

**{¶31}** In addition, R.C. 2901.22(B) provides:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a

high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

*State v. Crumpton,* 2024-Ohio-5064, ¶ 28 (4th Dist.).

**{¶32}** In addition to arguing that Maynard was a principal offender, the State contended at trial that Maynard is also guilty under a theory of complicity.  As we have observed, "[t]he complicity statute does not require the state to charge the defendant with complicity."  *State v. Whitehead,* 2022-Ohio-479, ¶ 82 (4th Dist.).  "Instead, R.C. 2923.03(F) allows the state to charge the defendant as a principal offender."  *Id.*  "The statute provides that '[a] charge of complicity may be stated in terms of [the complicity statute], or in terms of the principal offense.' "  *Id.*, quoting R.C. 2923.03(F).

**{¶33}** R.C. 2923.03(A)(2) provides, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) [a]id or abet another in committing the offense."  " '[T]o aid or abet is " ' "[t]o assist or facilitate the commission of a crime, or to promote its accomplishment." ' " *Id.* at ¶ 80, quoting *State v. McFarland,* 2020-Ohio-3343, ¶27, quoting *State v. Johnson,* 93 Ohio St.3d 240, 243 (2001), quoting *Black's Law Dictionary* (7th Ed. 1999). " '[P]articipation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed.' " *Id.* at 81, quoting *Johnson* at 245, quoting *State v. Pruitt,* 28 Ohio App. 2d 29, 34 (4th Dist. 1971).  "However, ' "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." ' " *Id.* quoting *Johnson* at 243, quoting *State v. Widner*, 69 Ohio St.2d 267, 269 (1982).

B.  Analysis

**{¶34}**  On appeal, Maynard contends that Young's testimony was not reliable and the jail phone call statements are not specific and do not reference drugs.  Maynard asserts that the State failed to meet its burden to prove every essential element of the case; however, he argues specifically that the State did not prove Maynard knew there were drugs in the car on November 23, 2020.  The State counters there was sufficient competent, credible evidence to support the verdicts.  The State also avers (as it did at trial) that not only was Maynard a principal actor, he was also complicit in the offenses committed by the other three occupants in the vehicle.

**{¶35}**  It is true that Young's testimony was significant at trial.  She testified that Maynard essentially supplied the funds for the trip.  She explained that Crum was her long-time boyfriend, and that she met Maynard and Collins through Crum.  Crum knew Maynard and Collins "through school."  Young was candid at trial about her and Crum's drug use.  She stated neither Crum nor she had jobs, so they were unable to secure drugs to "keep them well," or in drug parlance, keep them from getting sick from drug withdrawal.  When she met up with Maynard and Collins, they promised to provide Crum and her with drugs to "keep them well" in exchange for Young and Crum driving the over three-hour drive from Kentucky to Columbus.  Crum supplied his mother's car, and Young drove because she was the only licensed driver in the group.  Maynard paid for the gas in the car.

**{¶36}**  When the group got to Columbus, Young dropped Maynard and Collins off at a place that Young knew was a drug house, because she had dropped off people there in the past to obtain drugs.  Crum and Young went on to Young's brother's house

and after a time picked Maynard and Collins back up.  On their way back to Kentucky, the couples stopped in Circleville, and Maynard paid for the room where the group stayed.  At the hotel, Maynard and Collins gave Young and Crum methamphetamine and fentanyl, which the couple used.  Both Young and Crum were doing drugs the night before and morning of the traffic stop.

{¶37}  The State asked Young what was going on inside the car when the group was pulled over.  Young testified that "Justin [Crum] and I are sitting in the front seats, I'm driving.  In the back seat, Colby [Maynard] and [Brittany Collins] are sitting and I hear just a bunch of rustling and I can't really tell what's being said.  Um, I remember asking [Justin Crum], like what did they say?  What's going on back there?  Um, and you know later I found out that it was you know to put things in pants and um try to conceal it.  I don't know if it was switched or whatever but it was, but that's what it was." In addition, Young had a little bit of methamphetamine she put in the trunk of the car left over from what Maynard and Collins had given her.

{¶38}  On direct and during cross-examination, Young admitted that she lied in several ways to the highway patrol during the traffic stop.  In particular, she stated at trial that she lied to the troopers about the fact the backseat occupants (Maynard and Collins) were moving drugs around in the backseat.  Young acknowledged she had also been charged with the offenses.  During cross-examination, Young was asked if she had met with the State before testifying, and whether she had an agreement with the State.  She was also asked whether she believed her testimony would help her case. Thus, the evidence at trial showed the jury was aware that Young might receive a benefit for her testimony.   Defense counsel also challenged Young about whether she

was lying at the time of the traffic stop (when she said she had no knowledge of anything) or lying at the time of trial.

{¶39} Thus, Young's testimony showed that Maynard was a principal offender in trafficking drugs. Young and Crum transported Crum's acquaintances Maynard and Collins to a drug house to procure drugs in exchange for drugs to "keep them well." Maynard and Collins secured the drugs and gave the drugs to Young and Crum. Young testified that Maynard and Collins were in the backseat discussing Collins stuffing the drugs down her pants to hide them from the troopers. Certainly, Maynard was complicit in drug trafficking when he assisted and facilitated the offense by providing the gas money for the vehicle to travel for over three hours in exchange for the drugs and he also paid for the couples' hotel room.

{¶40} Further, jail phone calls Maynard placed after the stop correlate with the fact that the troopers seized the drugs, and Maynard financed the trip for drugs. For example, in a call he placed to Collins' number, eight to nine hours after the stop, Maynard was asked, "[t] hey got everything though, didn't they," and he responded, "yeah. Hell yeah. That's everything." Then he was asked, "[y]ou got any money or anything?" and he responded, "[n]o, I don't have nothing on me, I spent it, you know I spent too much money." Maynard also stated in that call to Collins that he could "write a statement if you want me to." Although Maynard denied to the trooper sometime during the traffic stop that he even did drugs, during the jail phone call he indicated "I'm going to be sicker than hell" presumably from drug withdrawals in the jail. He also said, "I tried to bring some back." In a later jail phone call to Collins, Maynard indicated that

the others were on the run, would not show up for court, and that the State would not get "none of them to testify."

**{¶41}**  Unlike what Maynard contends on appeal, Young's testimony and his jail phone calls are not the only evidence of his mental state that he knowingly transported a controlled substance when he knew, or had reasonable cause to believe, that the substance was intended for resale by the offender or another person.  Rather, in addition to Young's testimony, there was circumstantial evidence that showed his mental state and the other elements of the offense.  "[D]rug trafficking may be proven by circumstantial evidence."  *State v. Mobley,* 2023-Ohio-2229, ¶ 26 (9th Dist.), quoting *State v. Lopez-Olmedo,* 2022-Ohio, 2817, ¶ 33.  The direct evidence of mental state is often not available, so proof of the culpable mental state must be derived from circumstantial evidence.  *Id.*, citing *State v. Myers,* 2022-Ohio-991, ¶ 10 (9th Dist.); *State v. Atkinson,* 2020-Ohio-3522, ¶ 26 (9th Dist.).  *See also, State v. Hill,* 2018-Ohio-67, ¶ 32 (4th Dist.) quoting *State v. Woodruff,* 2008-Ohio-967, ¶ 9 (4th Dist.) (" '[a]bsent an admission by a defendant, the state must rely on circumstantial evidence to satisfy the reasonable cause to believe element.' " which applies to both drug trafficking (*Hill*) and receiving stolen property (*Woodruff)*).

**{¶42}**  Independent evidence corroborated Young's testimony.  For example, Kuehne noticed at the time of the stop that Maynard was excessively nervous.  Day saw Collins' head and shoulders moving during the traffic stop, which supports Young's testimony that Collins, who was seated beside Maynard, stuffed the drugs once the car was stopped.

**{¶43}** The lab analyst testified that the methamphetamine weighed in excess of 26 grams, the heroin/fentanyl in excess of 1 gram, and the fentanyl in excess of 2 grams, which Trooper Kuehne explained exceeded the bulk amount. Kuehne further testified the amount of drugs seized is not the amount you would see one keep for personal use. Kuehne also testified about the DEA's street value of meth and heroin/fentanyl. In addition, Kuehne explained that in his experience and training in drug interdiction, the route and length of route, paired with the dubious and conflicting explanations for the trip at the time of the traffic stop, rendered the stop suspicious for drug trafficking activity.

**{¶44}** Further, even if Young were the only witness the State presented to show Maynard's involvement, we have observed, " 'Ohio courts have held that the testimony of one witness, if believed by the jury, is enough to support a conviction.' " *State v. Smith,* 2020-Ohio-5316, ¶ 46 (4th Dist.) quoting *State v. Strong,* 2011-Ohio-1024, ¶ 42. (10th Dist.) citing *State v. Dunn,* 2009-Ohio-1688, ¶ 133 (5th Dist.). *See also, State v. Mack*, 2018-Ohio-5165, ¶ 15-16, (4th Dist.) citing *State v. Haugh*, 2016-Ohio-8008, ¶ 48 (6th Dist.) (rejecting manifest-weight challenge because the jury was free to assess the credibility of co-defendants and inmates who had a motive to fabricate their testimony); *State v. Rankin*, 2011-Ohio-5131, ¶ 30 (10th Dist.) (evidence not against the manifest weight when jury was aware that a witness for the state had received a plea deal in an unrelated case when the jury was aware she may receive favorable treatment on that case).

**{¶45}** We have also held, " '[t]he jury has the benefit of seeing witnesses testify, observing facial expressions and body language, hearing voice inflections, and

discerning qualities such as hesitancy, equivocation, and candor.' " *State v. Myers,* 2025-Ohio-1169, ¶ 59 (4th Dist.), quoting *State v. Gay,* 2024-Ohio-1673, ¶ 45 (4th Dist.), citing *State v. Fell,* 2012-Ohio-616, ¶ 14 (6th Dist.). As to Young's testimony, the trial court gave a detailed instruction to the jury regarding how to determine the credibility of the witnesses. In addition, the trial court complied with R.C. 2923.03(D), the complicity statute, by further instructing the jury in the following way:

> You have heard testimony from Jaime Young, another person who is accused of the same crime charged in this case and is said to be an accomplice. An accomplice is one who knowingly assists another in the commission of a crime. Whether Jaime Young was an accomplice and the weight to give her testimonies [sic] are matters for you to determine from all the facts and circumstances in evidence. The testimony of an accomplice that is supported by other evidence does not become inadmissible because of her complicity, moral turpitude or self-interest. But the admitted or claimed complicity of a witness may affect her credibility and make her testimony subject to great [sic] suspicion and require that it be weighed with great caution. It is for you as jurors in light of all the facts presented to you and from the witness stand to evaluate such testimony and determine its quality and worth or its lack of quality and worth.

**{¶46}** For these reasons, we hold that the jury did not clearly lose its way. The circumstantial evidence, Maynard's behavior at the traffic stop, the phone call made several hours later on the same day, and the phone call he made several months later, corroborate Young's testimony. In addition, the jury is in the best position to determine credibility. This is especially true because the trial court gave the jury instructions regarding witness credibility as well as the complicity instruction in accord with R.C. 2923.03(D).

**{¶47}** Further, the record shows that through cross-examination, the jury was aware of Young's pending charges and motivation to lie for her own benefit. "The fact that the testimony of a co-defendant constituted the primary evidence against appellant

does not, standing alone, render appellant's convictions against the manifest weight of the evidence." *State v. Johnson,* 2024-Ohio-2058, ¶ 20 (4th Dist.). *See, e.g., State v. Williams,* 2023-Ohio-2296, ¶ 94 (8th Dist.) (co-defendant's testimony was not "unworthy of belief" simply because of involvement in offense, when jury knew of co-defendant charges, defense counsel fully cross-examined co-defendant about motivation to testify, and trial court gave the jury accomplice instructions); *State v. Person,* 2017-Ohio-2738, ¶ 51-53 (10th Dist.) (evidence was not against manifest weight when primary evidence consisted of three co-defendants' testimony where jury was made aware of plea agreements, defense counsel cross-examined co-defendants about their motivations, and trial court gave cautionary instruction regarding testimony of an alleged accomplice). This is true particularly when the jury is aware of the co-defendant's involvement in the offense, the co-defendant's cooperation for possible leniency, and her attempt to minimize her role in the offense. *See State v. Berry*, 2011-Ohio-6452, ¶ 18 (10th Dist.).

**{¶48}** Young's testimony was not so incredible as to render Maynard's convictions against the manifest weight of evidence. The circumstantial evidence that Maynard picked up drugs in Columbus at a known drug house then distributed some of the drugs to Young and Crum at the hotel in Circleville, then continued on with a great amount of drugs through Scioto County in route to Kentucky (shown by his discussion about stuffing the drugs with Collins), coupled with his jail phone calls, show that Maynard was a principal or accomplice in trafficking drugs. Maynard was the one who financed the trip. We therefore overrule Maynard's second assignment of error.

CONCLUSION

{¶49} The trial court did not abuse its discretion when denying Maynard's motion for mistrial as the State attempted to comply with the trial court's order and the witness reference to a warrant was inadvertent, fleeting, and remedied by a curative instruction. The manifest weight of the evidence shows that Maynard is guilty of trafficking in methamphetamine, heroin-fentanyl, and fentanyl. We therefore overrule the assignments of error and affirm the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the **JUDGMENT IS AFFIRMED**. Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**